

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

JUL 2 3 2004

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| DIRECTV, Inc., | § | |
| PLAINTIFF | § | |
| | § | |
| | § | |
| vs. | § | B-03-194-5 |
| | § | |
| | § | |
| AARON VOREIS | § | |
| DEFENDANT | § | |

### AARON VOREIS RESPONSE TO PLAINTIFF'S REPLY TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE JUDGE OF SAID COURT:

Aaron Voreis, Defendant respectfully files this **RESPONSE TO PLAINTIFF'S REPLY TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**, and for response Defendant AaronVoreis would show:

1. Defendant Aaron Voreis is one of more than eight thousand persons nationwide who have been sued in federal district courts as a result of Plaintiff's management and security lapses. This particular civil action has been instituted on grounds that Plaintiff has allegedly obtained records showing that Defendant was shipped various "smart card" programming devices. See Complaint at Paragraph 19. Plaintiff does not appear to have performed any other investigation prior to filing this matter.

2. All claims asserted by DirecTV require as an essential element that Aaron Voreis either "intercepted" or "attempted to intercept" a protected signal. The issues presented in this matter were additionally reviewed in **DirecTV v. Bush, Case No H-03-1765,** Houston Division, Judge Sim Lake (October 24, 2003) DirecTV **v. Garnett, C. A.** NO. C-03-346, UNITED STATES DISTRICT COURT, SOUTHERN DISTRICT OF

TEXAS (order granting summary judgment is attached as Exhibit "A"), in that Defendant never "intercepted" a protected signal. The court dismissed Plaintiff DirecTV's entire claim. Furthermore, as in the case before the court where DirecTV relies upon mere possession these issues have been favorably resolved in the defendants favor, see *DirecTV v.Fisher* and *DirecTV v. Harnatkiewicz*, Case Nos 6:02-3197 and 0-02-3198-18 District of South Carolina, Charleston Division, Judge David C. Norton. The assertions made by DirecTV that mere possession of smart card technology is some how unlawful. These assertions are patently false as *Flowers v. Tandy Corporation*, 773 F2d 585 (4th Cir. 1985) and *DirecTV v Karpinsky*, 2003, U.S. Dist. Lexis 10912 (ED Mich 2003), hold that mere possession of even a "pirate " device does not give rise to a civil litigation.

3. Intercept is defined for purposes of the State Claim under Texas Civil Practice and Remedies Code Chapter 123, as requiring "aural" acquisition of the contents of the signal. Aaron Voreis did not "aurally" acquire the contents of the signal (or otherwise).

### Applicable Facts

4. Aaron Voreis did not either intercept or attempt to intercept any signal of DirecTV without authorization. AaronVoreis at various times intercepted the signal with authorization as a paid customer. An affidavit of Aaron Voreis is attached marked Exhibit "B" and made a part here of for all purposes.

### Applicable Procedure

5. DirecTV has the burden of proof to prove that Aaron Voreis intercepted or attempted to intercept its protected signal. It must present sufficient evidence of this to survive summary judgment. It cannot other than the most attenuated of inferences offer any evidence that Defendant "intercepted " or "aurally" acquired the signal of DirecTV, and could not off evidence that amounts to sufficient evidence. DirecTV in response to this motion should be required to set forth its "evidence" so the sufficiency of its "evidence" can be evaluated under relevant standards.

## Summary Judgment Evidence and Defendants Objections

6. Nothing contained in Plaintiff's reply to Defendant's Motion For Summary Judgment raises a fact issue that Defendant Aaron Voreis had ever intercepted or attempted to intercept any signal of DirecTV. In fact the entire reply at best raises nothing but innuendo and circumspect evidence as to the uses of certain equipment.
The evidence presented through the affidavits of the various experts contain conclusions and not evidence of wrong doing by this Defendant are hearsay and contain alleged factual statements which are objectionable in form and content.

7. Defendant objects to the affidavit of James F. Whalen to the extent that he is providing opinions without any evidence of training or education to substantiate the opinions contained to the reply to the summary judgment. His opinions contained are therefore subject to challenge under Dauber and Robinson. Not withstanding this evidence the witness has failed to provide <u>any</u> evidence that Aaron Voreis intercepted or pirated any signal of DirecTV, as it must to maintain this action against the Defendant.

8. Defendant objects to the Affidavit of Bill Gatliff wherein this witness simply attaches the reports of third parties and offers these reports as unsworn evidence before this honorable court. This amounts to nothing more than heresy and Exhibit 'B" should be struck in its entirety. Again even if this evidence was to be included it does not raise any evidence that Defendant Voreis intercepted signals from DirecTV.

9. The affidavit of Carol Fong-Hilton containing Defendant Aaron Voreis' account with Plaintiff DirecTV, does nothing more than establish that DirecTV has more accurate records than alleged in Plaintiff's Reply to Defendant's Motion for Summary Judgment. Plaintiff contends (Page 5) **"Defendant created his account with DirecTV on or about November 16, 2002 at which time he received and installed at his residence all of the equipment required to receive Plaintiff's programming"**. Defendant Voreis established the account with DirecTV in November of 1999, (as evidenced by the affidavit of Carol Fong-Hilton) years before Plaintiff alleges the

incorrect date in its reply to Defendant's Motion for Summary Judgment. However once again there is nothing contained in the affidavit that Defendant Aaron Voreis "intercepted or pirated" any signal of DirecTV.

10. The evidence establishes that Defendant did not illegally intercept Plaintiff's satellite programming signals as required in establishing a cause of action under 47 USC § 605. Plaintiff therefore cannot be a "person aggrieved" under 47 U.S.C. § 605 and Plaintiff is not entitled to relief under the statute.

11. Analysis of Plaintiff's claims under 18 U.S.C. § 2511 is essentially the same as for the claims in Count 1. The civil remedies for violations of § 2511 appear at 18 U.S.C. § 2520. "(a) In General. - Except as provided in section 2511(2)(a)(ii), *any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally* used in violation of this chapter may in a civil action recover from the person or entity, other than the United States, which engaged in that violation such relief as may be appropriate." [Emphasis supplied.]. Again, Plaintiff's entitlement to relief requires a showing that its electronic communications have been **"intercepted, disclosed, or intentionally used"** in an illegal manner. The summary judgment evidence establishes that such conduct did not occur.

12. Analysis of Plaintiff's claims under 18 U.S.C. § 2512 is, in the first instance, precisely the same as for the claims in Count 2. In addition, Defendant would also show that: (1) no private cause of action exists in favor of Plaintiff by virtue of § 2512; and, (2) that the summary judgment evidence demonstrates that no factual basis exists to support Plaintiff's claims that the devices identified in Paragraph 37 of its complaint are "primarily useful for the purpose of the surreptitious interception of wire or electrical communications and that such device or any component thereof has been or will be sent through the mail or transported in interstate commerce." Even if the evidence adduced by Plaintiff rises to a standard that the primary useful purpose would be surreptitious interception of satellite signals, the mere possession of such a devise is not unlawful. See

*Flowers v. Tandy Corporation,* 773 F2d 585 (4th Cir. 1985) and *DirecTV v Karpinsky,* 2003, U.S. Dist. Lexis 10912 (ED Mich. 2003), hold that mere possession of even a "pirate " device does not give rise to a civil litigation. However notwithstanding the argument the is <u>no</u> evidence that Defendant violated the statue.

### Summary Judgment Standard

13. The purpose of summary judgment procedure is to pierce the pleadings in an effort to assess whether there is a genuine need for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). That is, the summary judgment procedure is designed to isolate and dispose of factually unsupported claims. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). To be entitled to summary judgment, the Movant must either: (1) prove there is no genuine issue about any material fact and that it is entitled to judgment as a matter of law; or (2) show that there is an absence of evidence to support the non-moving party's case. Fed. R. Civ. P. R. 56(c); See also, Celotex, 477 U.S. at 325.

14. Although the Court must view the evidence and inferences in the light most favorable to the non-Movant, a non-moving plaintiff cannot establish a genuine issue of material fact by resting on the mere allegations in a complaint or unsubstantiated assertions. *Reese v. Anderson*, 926 F.2d 494, 498 (5th Cir. 1991). Instead, the non-Movant must "identify specific evidence in the record and articulate the 'precise manner' in which the evidence support[s] [his] claim." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.), cert. den'd, *Forsyth v. Vines*, 513 U.S. 871 (1994). As noted in *Anderson v. Liberty Lobby, Inc.,* "[the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." 477 U.S. 242, 252 (1986).

15. Finally, Defendant would show that Plaintiff's assertion that the devices identified in paragraph 19 of Plaintiff's Complaint is not factually justified. Plaintiff has

admitted that "[Defendant] can go down to Radio Shack and legitimately purchase these devices." In a quote from the Corpus Christi Caller-Times Robert Mercer stated:

**"They can go down to Radio Shack and legitimately purchase these devices."**

**Robert Mercer, DirecTV Spokesman, Corpus Christi Caller-Times, August 4, 2003**

16. Mercer has candidly admitted that consumers can "go down to Radio Shack and legitimately purchase these devices." Corpus Christi Caller-Times, August 4, 2003 [attached as Exhibit 1, Page 2]. It is clear from these wholly irreconcilable statements that Plaintiff cannot credibly argue that an ISO-7816 programmer, Netsignia 210, a Shanty Bootloader, or Emulator are per se, primarily designed for illegal uses. Plaintiff would instead have the Court believe that the source of the device is relevant when determining whether it is a "pirate access device." Stated differently, Mr. Mercer would apparently have no problem with the purchase of these devices at Radio Shack, but would claim that the device is illegal when it is sold by "DSS Pro and Smart Card Solutions". This position again defies logic since the actual devices would be indistinguishable. Section 2512 is addressed to the physical characteristics of the device, not the motivation of the buyer or the seller.

17. The basis for Plaintiff's claims under Count 4 cannot materially be distinguished from its claims under Count 1, and the discussion from Count 1 is incorporated herein by reference. Again, the summary judgment evidence establishes that Plaintiff is not a "person aggrieved" entitled to relief under § 605. Additionally, there is no evidence that this Defendant Aaron Voreis "actively programmed and reprogrammed DirecTV Access Cards and designed electronic systems for in use in surreptitiously obtaining DirecTV Satellite Programming" as alleged in this Count.

18. Plaintiff's state law claims of civil conversion and unlawful interception of communications also fail for the same reason as Plaintiff's federal claims. The summary

judgment evidence demonstrates that Defendant AaronVoreis did not "intercept" the signal.

## Conclusions

The Court should grant Aaron Voreis summary judgment denying all DirecTV's claims because no evidence exists that Aaron Voreis either intercepted or attempted to intercept any signal of DirecTV. Further, with respect to the State law claim, Defendant did not attempt to "aurally" intercept the signal. The Court should grant Aaron Vories judgment denying all claims, granting costs and attorney fees to Defendant.

RESPECTFULLY SUBMITTED,

**R.W. ARMSTRONG, P.C.**
2600 Old Alice Road, Ste A
Brownsville, Texas 78521
Telephone: (956) 546-5556
Telecopier: (956) 546-0470

BY: _____
R.W. ARMSTRONG
TBA#01323500
U.S. District Court # 2237

## CERTIFICATE OF SERVICE

I, R.W. Armstrong, hereby certify that a true and correct copy of the foregoing Motion for Summary Judgment was this 20th day of July 2004, mailed by certified mail, return receipt requested:

Lecia L. Chaney
**RODRIGUEZ, COLVIN & CHANEY, L.L.P.**
1201 E. Van Buren St.
P.O. Box 2155
Brownsville, Texas 78522

_____
R W ARMSTRONG

# EXHIBIT "1"

820 N. LOWER BROADWAY
P.O. BOX 9136
CORPUS CHRISTI, TEXAS 78469
PHONE (361) 884-2011

# Corpus Christi Caller-Times

PUBLISHER'S AFFIDAVIT

State of Texas, }
County of Nueces } ss:

Before me, the undersigned, a Notary Public, this day personally came
Gloria Gericke

who being first duly sworn, according to law, says that she is Custodian of Record of the Corpus Christi Caller-Times, a daily newspaper published at Corpus Christi, Texas, and stated that the attached Exhibit A is a true and correct copy of an item that appeared in the Corpus Christi Caller-Times on 08/04/2003.
   (DirecTV sues area residents)

_Gloria Gericke_
Gloria Gericke

Subscribed and sworn to before me this 14th day of July, 2004.
_Connie Haralson_
Notary Public, Nueces County, Texas
My commission expires on 5/14/05.




A SCRIPPS HOWARD NEWSPAPER



<u>DIRECTV SUES AREA RESIDENTS</u>
U ... 08/04/2003
## *Corpus Christi Caller-Times*
263432**Section:** Local News
**Edition:** Final
**Published:** 08/04/2003
**Page:** B1
**Story Type:** q

## DirecTV sues area residents
## Using illegal devices alleged in lawsuits
**Byline:** *By J.R. Gonzales and Tim Eaton, Caller-Times*

In recent months, DirecTV has done more than serve up programming to area residents: The company has also been suing them as well.

The lawsuits, some of which have been filed here in federal court, accuse some residents of using illegal devices that allow them to view DirecTV programming for free.

A raid in May 2001 at mail shipping facilities in three states uncovered numerous shipping records, e-mail communications and credit card receipts that identified who purchased the equipment. From that raid, more than 8,000 lawsuits have been filed against those who allegedly provided and purchased the equipment.

According to DirecTV spokesman Robert Mercer, pirating the signal prevents the company from providing an affordable service to its customers. It also cheats other businesses out of a potential sale as well.

But one local attorney likened the whole matter to lawsuit abuse and said it only stifles technological _improvement.

"We could just completely stifle technological innovation," David Sibley said.

Sibley represents a South Texas resident accused of using devices that intercept and decrypt DirecTV's protected satellite transmissions. Since March, the company has sued at least 11 people. However, some have settled or had their cases dropped.

Of the cases that remain, the defendants are accused of purchasing devices known as emulators, that permit interception of DirecTV programming.

They are also accused of purchasing a programmer that allows DirecTV access cards to be illegally programmed so that they allow free access to satellite programming.

An access card looks similar to a credit card, but contains a computer chip that makes it necessary to unscramble satellite signals being sent through the satellite dish.

Sibley said many of the defendants are merely tinkering with electronics and compared their work to that of inventor Thomas Edison and Microsoft founder Bill Gates.

"All these people were tinkerers," Sibley said. "And that's completely legal."

Mercer said that explanation was another excuse to justify stealing.

"They can go down to Radio Shack and legitimately purchase these devices," Mercer said.

The 11 people named in the suit in the Corpus Christi court are not the first to be sued by DirecTV.

Last month a judge in Florida handed down a ruling with an enormous amount of restitution. Steven Frazier will have to pay a $180-million restitution and serve five years in federal prison

on a conspiracy charge.

Frazier, 28, had pleaded guilty to a scheme to manufacture and sell devices which would decrypt satellite television signals and allow people to get premium service for free.

Kenton V. Sands, Frazier's defense attorney, said his client is not expected to pay off the entire amount. But he would have to pay $500 monthly once he gets out of prison.

"He'll never end up paying a million of that, that's not a realistic figure," said Tampa attorney Richard Escobar, who also represented Frazier.

U.S. District Judge James Moody ordered the restitution based on a formula of how much Frazier's intended victims, Direct TV and Echostar, would have lost had his scheme succeeded. The television companies estimate they could have lost $900 million in business.

"I think that's the largest one we received," said Larry Rissler, vice president of Direct TV's Office of Signal Integrity. "We take this very seriously."

**Story Credit:** Contact Tim Eaton at 886-3794or eatont@caller.com. The Associated Press contributed to this report.