IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED
AUG 1 8 2004
Michael N. Milby
Clerk of Court

| | |
|---|---|
| DIRECTV, Inc., § | |
| § | |
| Plaintiff, § | |
| § | |
| V. § | No. B-03-194-5 |
| § | |
| § | |
| AARON VOREIS, § | |
| § | |
| Defendant. § | |

## PLAINTIFF'S SUR-REPLY TO DEFENDANT
## AARON VOREIS' MOTION FOR SUMMARY

Plaintiff DIRECTV, Inc. ("Plaintiff" or "DIRECTV") files this Sur-Reply to Defendant Aaron Voreis' ("Defendant" of "Voreis") Reply to Motion for Summary Judgment ("Response"). In support thereof, DIRECTV shows as follows.

### I. INTRODUCTION

DIRECTV files this brief sur-reply to address the objections to its evidence raised by Defendant's reply and to address Defendant's continued misrepresentation of the law concerning actual interception of DIRECTV's programming. It should be noted, however, that this motion for summary judgment was filed before any discovery had taken place in this matter. In fact, only recently, on July 26, 2004, did DIRECTV receive responses to written discovery. At this point the Defendant has still not been deposed. DIRECTV respectfully requests that it be permitted to depose the Defendant and to obtain any third party discovery as necessary when revealed through written discovery and deposition.

## II. RESPONSE TO DEFENDANT'S OBJECTIONS TO DIRECTV'S SUMMARY JUDGMENT EVIDENCE

Defendant has objected to DIRECTV's summary judgment claiming that the evidence either fails a Daubert and Robinson challenge, that the evidence is hearsay and that the evidence does not comport with the argument set forth in the response. Defendant's objections are wholly without merit.

Defendant first objects to the affidavit of James F. Whalen stating that he is providing opinions without a showing of his training or education. However, Defendant does not state which portions of Mr. Whalen's affidavit he contends are improper nor does he give any indication of how Mr. Whalen's statements are improper other than to conclusorily state that some unidentified portions of the affidavit are "subject to challenge under Dauber and Robinson." He does not make any challenge under Daubert or Robinson to any portion of Mr. Whalen's affidavit. Mr. Whalen's affidavit states that he has been employed with DIRECTV for a number of years and has dealt extensively with the piracy of DIRECTV's signals. He knows how DIRECTV works and about the problems DIRECTV has with piracy in general. He is familiar with the devices that are used to intercept DIRECTV's programming and how those devices work. He is familiar with the devices purchased by Defendant and knows that those devices were marketed as a means of obtaining DIRECTV programming for free. His testimony is not expert testimony. Instead, his testimony is based on his personal observations regarding DIRECTV piracy. Defendant's objection that Mr. Whalen's affidavit is some how defective is clearly erroneous.

Similarly, Defendant objects to the affidavit of Bill Gatliff claiming that the expert reports attached to the affidavit are unsworn hearsay. Apparently Defendant has not fully read Mr.

Gatliff's affidavit. On page 2, paragraph 3 of the affidavit, Mr. Gatliff clearly states that the information contained in the expert reports are "hereby incorporated into this affidavit by reference as if fully set forth herein. I have reviewed the devices, analysis and opinions provided in each Netrino report attached hereto, I am in agreement with that analysis and opinion and adopt each analysis and opinion regarding the devices provided in each document attached as my own." By making such a declaration, Gatliff incorporates the reports into his affidavit as if he had retyped every word into the affidavit. He further adopts all of the reports as his own and fully agrees with the opinions contained therein. This is clearly not hearsay testimony; rather, Gatliff, by adopting the opinions contained in the expert reports and by incorporating them by reference into his affidavit, is personally testifying to each opinion contained in the reports attached to his affidavit.

Finally, Defendant makes an inapposite argument that DIRECTV's account records are somehow unreliable because in its response to his motion for summary judgment DIRECTV states that Defendant created his account on November 16, 2002. The reference to November 16, 2002 in the motion is clearly a typo. Defendant's account, as is indicated in the records attached to Carol Fong-Hilton's affidavit, was created and activated on November 6, 1999. A typo in the motion does not make the underlying documents in any way unreliable. Defendant's objections to DIRECTV's evidence should be overruled.

## III. DIRECTV'S OBJECTIONS TO DEFENDANT'S EVIDENCE

In his reply brief, Defendant attaches an article concerning DIRECTV lawsuits that appeared in the Corpus Christi Caller Times on August 4, 2003. It is well established that newspaper reports are inadmissible to prove the truth of the statements therein. *Pam-Islamic Trade Corp. v. Exxon Corp.*, 632 F.2d 539, 556 (5th Cir. 1980), *cert. denied*, 454 U.S. 927 (1981).[1] Thus, "except to the extent that statements in the newspaper articles on which [the movant] relies are party admissions, they are inadmissible hearsay to the extent used to prove the truth of the matters asserted." *Ward v. Bassinger*, 1997 U.S. Dist. Lexis 16560, *7 n.1 (N.D. Tex. April 8, 1997) (citing *Pam-Islamic Trade Corp, supra.*). While Defendant does attach an affidavit from someone at the Corpus Christi Caller Times stating that the article was indeed published, he offers no testimony stating that the information contained in the article is true and correct. Despite the fact that the author's contact information appears on the article itself, Defendant fails to provide any affidavits from the authors listed in the byline or from any other source that might verify the accuracy of the statements made in Exhibit 1. The Court, nor indeed any reader of the article, can determine the context of the quote on which Defendant relies. The article is unclear about what devices are being referred to by Mr. Mercer. Indeed, some of the devices for which DIRECTV has pursued Defendant, the bootloaders, are not even mentioned in the article and DIRECTV's expert testimony demonstrates that those devices are primarily designed to intercept DIRECTV's programming. The article simply has no

---

1 *See also, e.g., Robinson v. Williams*, 721 F.Supp. 806, 807 (S.D. Miss 1989) (newspaper articles are inadmissible hearsay for the purposes of a summary judgment motion); *Achee v. Port Drum Co.*, 197 F.Supp.2d 723, 730 (E.D. Tex. 2002) ("any statements made or alluded to in the article cannot be considered as evidence supporting Defendants' motion for summary judgment")(citing *McClure v. Mexia Indep. Sch. Dist.*, 750 F.2d 396, 401 (5th Cir. 1985); *Dallas County v. Commercial Union Assur. Co.*, 286 F.2d 388, 392 (5th Cir. 1961)); *Jim Sowell Constr. Co. v. City of Coppell, Texas*, 61 F.Supp.2d 542, 551 (N.D. Tex. 1999) (evidence composed of quotations contained in newspaper articles is inadmissible hearsay) (citing FED. R. EVID. 801(c), 802) *Cf. Tecon Waikiki, Inc v. The Queen Emma Foundation*, 1998 U.S. Dist. Lexis 109, *10 n.3 (noting that a newspaper article "in almost all circumstances is inadmissible" the court

bearing on whether Defendant intercepted, attempted to intercept or assisted others in intercepting DIRECTV's programming.

Further, Defendant makes no effort to demonstrate that the news article, or the statements contained therein, fall within some exception to the hearsay rule. The article, accordingly, cannot be considered summary judgment evidence against DIRECTV for the truth of the statements contained therein. *See* FED. R. EVID. 602, 603, 801, 802 and 803. DIRECTV asks the court to disregard the Corpus Christi Caller Times article as evidence in favor of summary judgment and moves that all such references to the article be stricken from the record.

### IV. ACTUAL INTERCEPTION OF DIRECTV'S PROGRAMMING IS NOT REQUIRED IN ALL OF DIRECTV'S CAUSES OF ACTION AND IN ANY EVENT, DIRECTV HAS PRESENTED AMPLE SUMMARY JUDGMENT EVIDENCE DEMONSTRATING THAT THE DEFENDANT ATTEMPTED TO INTERCEPT OR INTERCEPTING DIRECTV'S COMMUNICATIONS

In his reply brief, Defendant repeatedly asserts that DIRECTV must demonstrate actual interception on all of its causes of action in order to prevail. Defendant's interpretation of the law, however, is flawed. DIRECTV need not show actual interception of its signal in order to maintain a cause of action under 47 U.S.C. § 605(a); 47 U.S.C. § 605(e)(4) or Tex. Civ. Prac. & Rem. Code.[2]

#### A.   Actual Interception is Not Required Under 47 U.S.C. § 605(a)

Section 605(a) could not be clearer: "No person not being entitled thereto shall receive **or assist in receiving** any interstate or foreign communication by radio and use such communication

---

took judicial notice of stock quotations in the newspaper).
[2] Defendant has also replied on the issues of 18 U.S.C. § 2512 and civil conversion. As stated in DIRECTV's response to his motion for summary judgment, DIRECTV will move to dismiss those claims as it does not wish to pursue them any further. Therefore they will not be addressed by this sur-reply.

(or any information therein contained) for his own benefit or for the benefit of another not entitled thereto . . ." 47 U.S.C. § 605(a) (emphasis added). DIRECTV needs only to submit evidence of either interception "*or*" assistance. Thus, and assuming *arguendo* that DIRECTV's evidence does not raise a fact issue on Defendant's personal use of the 8 devices at issue, DIRECTV can still prevail by raising an issue on whether Defendant assisted another in intercepting the signal. *See, e.g., DIRECTV, Inc. v. Ferguson*, 2004 U.S. Dist. LEXIS 14484 (N.D. IN 2004); *Cable/Home Communication Corp. v. Network Productions, Inc.*, 902 F.2d 829 (2d Cir. 1990) (selling devices to descramble scrambled television signal violated § 605 because it was assisting another in unauthorized viewing); *Cox Cable Cleveland Area, Inc. v. King*, 582 F. Supp. 376 (N.D. Ohio 1983) (the sale of devices for unscrambling scrambled cable signal was a violation of § 605).

As discussed in DIRECTV's response to Defendant's motion for summary judgment, there is ample evidence to support an inference that Defendant assisted others in stealing DIRECTV services. Defendant has been unable to provide a coherent explanation for his purchase of so many devices. He bought at least 8 devices designed for the piracy of DIRECTV's programming. See Exh. B attached to DIRECTV's response to Defendant's motion for summary judgment. That these devices are designed and/or marketed for the piracy of DIRECTV's signals is uncontroverted. Eight devices is more equipment than he could reasonably use for his personal benefit.[3] In similar circumstances, courts have found that the most likely inference to draw is that the defendant is reselling equipment:

> The quantity of devices purchased by the defendant is inconsistent with personal use and entirely consistent with the conduct of a distributor. Therefore, the number of "pirate" decoder-

---

[3] The DIRECTV account records attached at Exhibit C to DIRECTV's response to Defendant's motion for summary judgment demonstrate that Defendant only subscribed one DIRECTV receiver.

converters purchased by defendant demonstrates his intent to distribute and/or sell such devices on the black market. The only conceivable motive the defendant could have had in selling this equipment was his direct or indirect commercial advantage or personal financial gain.

*Cable Systems New York City Corp. v. Kutsenko*, 2001 U.S. Dist. LEXIS 17590 at *9-10 (S.D.N.Y. October 30, 2001); *accord Cablevision Systems New York City Corp. v. Soto*, 2001 U.S. Dist. LEXIS 17591 (S.D.N.Y. October 25, 2001) (same language with regard to a purchaser of sixty pirate devices); *DIRECTV, Inc. v. Adkins*, 2004 U.S. Dist. LEXIS 5337 (W.D. Va. April 1, 2004) (holding that when a defendant purchased 15 devices, the Court could reasonably conclude that he distributed 14 of those devices); *DIRECTV v. Wierzba*, 2004 U.S. Dist. LEXIS 2961 at * 6-7 (N.D. Ill. February 25, 2004) (enhancing damages because defendant bought three unloopers); *Cablevision of Southern Connecticut, L.P. v. Smith*, 141 F. Supp. 2d 277 (D. Conn. 2001) (inferring that 19 of 20 devices purchased by defendant were resold to others). In *Kutsenko*, the "number of pirate devices" held sufficient to give rise to an inference the Defendant was a reseller was 5, less than the number Defendant received. Similarly, the courts in *Wierzba* and *Smith* held that the purchase of more than one device supported an inference that the additional devices were resold, even with 3 devices or 20 devices. Obviously, if the purchase of 3 or 5 piracy devices is enough to lead a court to conclude that a defendant must be engaged in distribution, Defendant's purchase of 8 such devices should be sufficient to raise a fact issue concerning whether Defendant "assisted" others in DIRECTV piracy and preclude entry of summary judgment.

### B. Actual Interception is Not Required Under 47 U.S.C. § 605(e)(4)

Similarly, 47 U.S.C. 605(e)(4) makes it clear that a showing of actual interception is not required in order to maintain a cause of action. Section 605(e)(4) makes it unlawful for a person to manufacture, assemble, modify, import, export, sell or distribute" electronic equipment knowing of

having reason to know that it is primarily designed to intercept satellite programming. The statute makes no mention of "interception" being a requirement to prove a cause of action. *See, eg, DIRECTV, Inc. v. Ferguson*, 2004 U.S. Dist. LEXIS 14484 (N.D. IN 2004); *DIRECTV, Inc. v. Adkins*, 311 F. Supp 2d 544, 548 (W.D. VA 2004); *DIRECTV, Inc v. Boonstra*, 302 F. Supp. 822 (W.D. MI 2004); *DIRECTV Inc. v. Budden.* Indeed, such a reading would result in an absurd result: DIRECTV could pursue users of satellite theft equipment but not those who manufacture and distribute that equipment unless they could also prove that the manufacturer used the devices himself. As is evidenced by the number of devices purchased by the Defendant and based on the case law cited above, there is little doubt that Defendant was engaged in the distribution of devices primarily designed to intercept DIRECTV's programming.[4]

As no showing of actual interception is required under 47 U.S.C. §605(e)(4) and Defendant has only moved for summary judgment on the basis that DIRECTV has not proven actual interception, Defendant's motion for summary judgment should be denied.[5]

---

[4] Indeed, despite the fact that DIRECTV has properly pled a cause of action against the Defendant for distribution of devices designed to intercept DIRECTV's programming and despite the fact that the Defendant moved for summary judgment on all of DIRECTV's claim, he does not deny distributing devices in his affidavit.

5 While Defendant may attempt to argue that DIRECTV cannot make a showing as a person aggrieved under 605(e)(4) absent a showing of interception because DIRECTV is not engaged in "satellite cable programming," this Court should be aware that such an argument has been defeated by other courts. In the definition of person aggrieved (47 U.S.C. § 605(d)(6)), the reference to "satellite cable programming," is not a restriction; the use of the term "also" evinces Congressional intent that the term is used to expand rather than restrict the scope of the statute. *See American Surety Co. v. Marotta*, 287 U.S. 513, 517 (1933).

In *United States v. Harrell*, 938 F.2d 36 (5th Cir. 1993) the defendant argued that section 605(e)(4) "is vague and that the statute solely prohibits commercial cable transmissions as opposed to individual television signals as delineated in the definitions, section 605(d)(1)." *Id.* at 39. The court held that the statute was "not vague or ambiguous at all" and rejected the argument that "the word 'cable' signifies only commercial usage and that the statute distinguishes between the direct transmission of satellite signals directly to individuals or its retransmission via cable operator." *Id.* The court reiterated that "the statute's purpose is to proscribe the piracy of programming signals, whether they be for commercial or personal use." *Id.* The court continued,

> It is unambiguous that the interception of encrypted satellite transmissions for television programming for commercial or private use is . . . prohibited by section 605. It challenges reason that the statute would not include the prohibition of the surreptitious interception of subscribed individual television programming.

### C. Actual Interception is Not Required Under Tex. Civ. Prac. & Rem. Code Chapter 123

Chapter 123 of the Texas Civil Practice and Remedies Code makes it unlawful for a person to intercept or attempt to intercept another person's communications. There is no requirement that DIRECTV produce evidence of actual interception when the mere *attempt* to intercept DIRECTV's programming is actionable under the statute. Tex. Civ. Prac. & Rem. Code § 123.002(a)(1). As discussed below, DIRECTV has provided evidence to draw a reasonable inference that Defendant actually intercepted DIRECTV's programming; such evidence is clearly enough to establish the attempt as well.

### D. DIRECTV Has Presented Evidence of Actual Interception to Create A Material Issue of Genuine Fact

Summary judgment is not appropriate where an inference of interception can be established. Numerous courts in cases brought by DIRECTV have held evidence similar to that submitted by DIRECTV in this case is more than sufficient to raise a fact issue for trial. *See, e.g., DIRECTV, Inc. v. Miller*, 2003 U.S. Dist. LEXIS 24958 at *9-10 (M.D. Fla. November 20, 2003; *DIRECTV, Inc. v. Spokish*, 2004 U.S. Dist. LEXIS 4092 at *11 (M.D. Fla. February 19, 2004); *DIRECTV, Inc. v. Disalvatore*, 2003 U.S. Dist. LEXIS 23822 (N.D. Ohio May 21, 2003). "[C]omputer records that show the purchase and installation of equipment designed to unlawfully intercept electronic communications will suffice to create a rebuttable presumption of a violation of Section 605." *DIRECTV, Inc. v. Gemmell*, 2004 U.S. Dist. LEXIS 10892 at * 19 (W.D. La.. April 29, 2004). Evidence, such as that here, that the Defendant purchased devices primarily designed to intercept

---

*Harrell,* 983 F.2d at 40 (citation omitted). See also *DIRECTV, Inc v. Boonstra*, 302 F. Supp. 822 (W.D. MI 2004).

DIRECTV's programming coupled with evidence that the Defendant had all of the equipment necessary to pirate DIRECTV's programming gives rise to the inference that the Defendant did indeed intercept DIRECTV's programming. As the court explained in *Miller*, it is only natural to infer from the purchase of specialized electronic equipment such as an "unlooper" or "reader/writer" that the defendant made use of it:

> A reasonable jury could conclude that Defendant illegally stole DirecTV's programming. Based on their life experience, a jury could reasonably assume that people only buy electronic equipment such as televisions, computers, or (in the case of Defendant) satellite piracy unloopers when they plan to use such equipment. It would be a strange world, after all, if people regularly bought such equipment and then put it in the closet to collect dust. With this assumption in mind, a reasonable jury could then reject Defendant's self-serving testimony that he has never pirated satellite signals and conclude instead that he did what normal people do after they buy electronic equipment -- they use it.

*Miller*, 2003 U.S. Dist. LEXIS 2003 at *9-10; *accord Spokish*, 2004 U.S. Dist. LEXIS 4092 at *12 ("By parity of reasoning, it would also be a strange world if people like the Defendant purchased pirate access devices intending to use them for a purpose other than that for which they were exclusively designed: pirating Direct Television.").

The evidence submitted by DIRECTV raises a fact issue for trial. In a recent decision, one court explained that: "Cavanaugh concedes he is a DIRECTV subscriber, has the necessary DIRECTV receiver, and purchased piracy devices. **This evidence alone supports the reasonable inference that signal theft did in fact occur.**" *DIRECTV, Inc. v. Cavanaugh*, 2003 U.S. Dist. LEXIS 24561 (E.D. Mich., 2003) (emphasis added). Under *Cavanaugh*, a fact issue exists: Defendant here was a DIRECTV subscriber and possessed the necessary DIRECTV receiver and DIRECTV has produced evidence that he purchased piracy devices.

Nor are the courts in DIRECTV cases the only ones to recognize the inference. The same conclusion has been reached in cases involving cable TV decoders:

> Defendant purchased a "pirate" converter-decoder device from Teleview. This device would permit one to view Cablevision's premium and pay-per-view cable television signals without authorization. See Kempton Aff. PP 21-22, at 7. Since the defendant was previously provided with an authorized converter-decoder from Cablevision, it is reasonable to conclude that the defendant's purpose in purchasing "pirate" equipment from Teleview was to receive unauthorized cable television programming.

*Cablevision Sys. of New York City Corp. v. Cotai*, 2003 U.S. Dist. LEXIS 16926 (S.D.N.Y. September 19, 2003); *accord Cablevision Sys. of New York City Corp. v. Treio*, 2002 U.S. Dist. LEXIS 21435 (S.D.N.Y. November 5, 2002) (same language); *Community Television System, Inc. v. Caruso*, 134 F. Supp. 2d 455, 460 (D. Conn. 2000), *aff'd in relevant part*, 284 F.3d 430 (2d Cir. 2000).[6]

Clearly, while the Defendant denies having intercepted DIRECTV's programming, a reasonable jury could find in DIRECTV's favor notwithstanding the denials of the Defendant.[7] Defendant's motion for summary judgment should be denied.

---

[6] DIRECTV is aware, as Defendant has cited, that some courts have suggested that corroborative evidence is needed to prevent entry of summary judgment. Specifically, DIRECTV is aware of the decision of the Court in *DIRECTV, Inc. v. Bush*, 2003 U.S.Dist. LEXIS 2963 (S.D.Tex. October 24, 2003) *and DIRECTV, Inc. v. Garnett*. The decisions in *Bush* and *Garnett*, on which Defendant relies, are inapposite. In *Bush*, the Court noted specifically that DIRECTV submitted no summary judgment evidence whatsoever in response to Bush's Motion. *Bush*, slip op. at 4 n.8. Thus, the Court in *Bush* lacked the evidence submitted here regarding the peculiar design and programming of these devices, which makes them uniquely designed for piracy of DIRECTV's programming and the evidence that Bush was a subscriber to DIRECTV's programming. And unlike the defendant in *Bush*, Defendant here purchased not one device, but 8 devices. The Court in *Garnett* relied substantially on *Bush* without recognizing the different evidentiary posture of the two cases. Judge Sim Lake, the author of the *Bush* opinion has subsequently denied a summary judgment motions once presented with DIRECTV's evidence. *Bush* stands for nothing more than that a plaintiff cannot avoid summary judgment merely by raising doubts as to the defendant's credibility.

[7] It should also be noted that the Defendant in this case has not yet been deposed and DIRECTV does not know what his testimony will be concerning his use of the devices at issue.

Respectfully submitted,

RODRIGUEZ, COLVIN, CHANEY & SAENZ, L.L.P.

By: _____
**Lecia L. Chaney**
State Bar No. 00785757
Fed. I.D. #16499
**Christopher E. Moore**
State Bar No. 24011075
Fed. I.D. #36611

1201 E. Van Buren St.
P.O. Box 2155
Brownsville, Texas 78522
Telephone: (956) 542-7441
Telefax    : (956) 541-2170
*ATTORNEYS FOR PLAINTIFF, DIRECTV*

OF COUNSEL:

GREER, HERZ & ADAMS, LLP

**Joe A.C. Fulcher**
Federal ID No. 14126
St. Bar No. 07509320

**Kelly-Ann F. Clarke**
Federal ID No. 27195
St. Bar No. 24027929
**Robert A. Swofford**
Federal ID No. 19403
St. Bar No. 00791765
**Joseph R. Russo, Jr.**
Federal ID No. 22559
St. Bar No. 24002879
One Moody Plaza, 18th Floor
Galveston, Tx 77550
(409) 797-3200 (telephone)
(409) 766-6424 (telecopier)

## CERTIFICATE OF SERVICE

A COPY OF THIS SUR-REPLY WAS SENT TO THE DEFENDANT VIA FACSIMILE ON THE 18TH DAY OF AUGUST 2004 PURSUANT TO THE FEDERAL RULES OF CIVIL PROCEDURE:

> R.W. Armstrong, P.C.
> 2600 Old Alice Rd., Ste. A
> Brownsville, 78521

_____
Lecia Chaney